CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 12 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:07CR00039-2 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JOEL DARRON MARTIN, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a Superseding Indictment charging defendant in Count One with aiding and abetting another, did by force, violence and intimidation take from a person money, namely $10,252.00, belonging to and in the care, custody, control, management, and possession of the Shenandoah National Bank, Harrisonburg, Virginia, whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing this offense the defendant did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm described as a 9mm Glock handgun, all in violation of Title 18, United States Code, Sections 2113(a) and 2113(d), and Title 18, United States Code, Section 2; in Count Two with aiding and abetting another, did by force, violence and intimidation take from a person money, namely $3,485.00, belonging to and in the care, custody, control, management, and possession of the Virginia Savings Bank, Strasburg, Virginia, whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing this offense the defendant did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm described as a 9mm

Glock handgun, all in violation of Title 18, United States Code, Sections 2113(a) and 2113(d), and Title 18, United States Code, Section 2; and in Count Five, a forfeiture allegation, having committed one or more of the felony offenses set forth in the Superseding Indictment, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(c), as authorized by Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses alleged in the Superseding Indictment, without regard to the type of interest held, wherever located and in whatever name held.

On December 4, 2007, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to a *lesser offense* in Counts One and Two of the Superseding Indictment, bank robbery, in violation of Title 18, United States Code, Section 2113(a). At this hearing the defendant was placed under oath and testified that his full legal name is Joel Darron Martin, that he was born on September 27, 1987, and that attended high school up to the twelfth grade. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. The defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. The defendant's counsel stated that she had no reservations as to his competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Superseding Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, assurances, or threats in an effort to induce his plea. The defendant testified that he understood that

the lesser offense in Counts One and Two to which he was pleading guilty is a felony and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $200.

The defendant was informed that the maximum possible penalty for the lesser offense in Counts One and Two, bank robbery, in violation of Title 18, United States Code, Section 2113(a), is twenty years imprisonment and/or a fine of $250,000, plus a period of supervised release for each Count. The defendant was further informed that parole has been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant was made aware that his assets were be subject to forfeiture under Count Five.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty. The defendant stated that he was aware that pursuant to

the Sentencing Guidelines the sentencing judge could add or subtract up to four sentencing points to his sentencing level based upon his role in the offenses. The defendant stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in the manner set forth in the plea agreement. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant was informed that if he fulfills his obligations under the plea agreement and accepts responsibility for his conduct that the government will recommend that he receive a sentence of incarceration at the low end of the applicable Sentencing Guidelines range, and the government may object to any motion for downward departure that he might make. The defendant stated he understood that the location for service of any term of imprisonment is ultimately determined by the Bureau of Prisons, but to the extent it is consistent with the Bureau of Prisons' applicable rules and regulations, the government would not object to any request he might make to be confined at a community correctional facility.

The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within thirty days of the date of the plea agreement. The defendant agreed that restitution should be based on the entire scope of his criminal conduct, not just the charges to which he is pleading guilty. The defendant acknowledged he knew that he and Luke Aaron Thomas, his co-defendant, would be jointly and severally liable for restitution totaling $13,737. The defendant stated he knew that although restitution was due upon entry of his judgment of conviction, it was
4

agreed that he will make monthly payments during his incarceration and supervised release or probation.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts One and Two, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that he understood that under the terms of the agreement he was waiving rights to appeal or to collaterally attack his conviction or sentence. The defendant stated he was aware that the government had retained its right to appeal any sentence imposed below the applicable Sentencing Guidelines range or below the government's recommended sentence. The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant acknowledged that he consented to the abandonment, official use and/or destruction of any contraband and personal property seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant acknowledged that he agreed to forfeit personal property seized or restrained by the government, and that such a forfeiture of property is

proportionate to the degree and nature of the offenses he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency. The defendant testified that he understood that any information given by him during a proffer or cooperation would not be used against him to enhance his sentence pursuant to USSG § 1B1.8.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant asked the court to accept his plea of guilty to a *lesser offense* in Counts One and Two of the Superseding Indictment, bank robbery, in violation of Title 18, United States Code, Section 2113(a).

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged, is as follows:

On the morning of June 9, 2007, Luke Aaron Thomas ("Thomas") entered Shenandoah National Bank, 2169 South Main, Harrisonburg, Virginia, pointed a gun at two bank employees, and demanded fifteen thousand dollars. Thomas then removed a device from the bag he was carrying and placed it on the floor of the bank, stating "this is not a paint bomb." Thomas also removed a second gun from his bag, and pointed both guns at the bank employees. Thomas jumped over the bank teller counter, and advised the bank employees that he would kill them if they put "ink" in the money. A bank employee gave Thomas $10,252.00 from the drive-through teller drawer. Thomas jumped back over the teller

6

counter, bent down toward the device on the floor, and told the bank employees to call the police. The bank employees called the police and left the scene unharmed. The device was later determined to be a well-constructed hoax bomb, which included a cellular telephone as one of the components.

The above-described telephone was taken into evidence by the Harrisonburg Police Department, and subsequently turned over to the FBI, where the telephone and other bomb fragments were entered into FBI evidence. The telephone is a TracFone, model TFC139B, IMEI number 011148009164272. On July 11, 2007, TracFone Co. of Miami, Florida, advised that the above-described telephone was activated on June 2, 2007, at Wal-Mart, 2160 John Wayland Highway, Harrisonburg, Virginia. On July 11, 2007, the Loss Prevention Department at Wal-Mart was contacted, and confirmed that the above-mentioned telephone was purchased on June 2, 2007, using BB&T VISA debit card number 4108940014862114 (receipt indicated other hoax bomb-making materials), which BB&T confirmed was a BB&T account. BB&T Law Enforcement Services confirmed that the account belongs to Luke Aaron Thomas, 1005 A College Avenue, Harrisonburg, Virginia.

On June 30, 2007, Thomas entered Virginia Savings Bank, 33230 Old Valley Pike, Strasburg, Virginia, wearing a black ski mask, holding a pistol in his right hand, and a backpack in his left. Thomas demanded that everyone "put your hands on top of your head". Thomas placed the back pack on the counter, unzipped the bag, pulled out a second weapon, and told a bank employee to "put money in the bag". While the teller put the money in the bag ($3,485.00), Thomas had one weapon pointed at the people in the lobby area and the second pointed at the teller line. As Thomas left the bank he turned and stated "You can now call the police".

On the morning of July 7, 2007, First Bank, 860 South Main Street (Rt. 11), Woodstock, Virginia, was robbed at gunpoint by Thomas. Thomas displayed a gun at all times, wore a black mask similar to a toboggan and carried a book-bag from which he took the gun and in which he had the money placed. He took $11,011.00.

At approximately 3:30 PM on July 11, 2007, Pioneer Bank, 890 West Market Street, Harrisonburg, Virginia, was robbed at gunpoint by Thomas. $24,442.00 was stolen from the bank. Less than an hour later, law enforcement officers arrested Thomas at his residence, and seized $26,825.00 in cash, which included money wrappers from Pioneer Bank and First Bank.

On July 11, 2007, Luke Aaron Thomas confessed to breaking into Hunter's Paradise in the Shenandoah Heritage Farmer's Market, 121 Carpenter Lane, Harrisonburg, Virginia, and stealing two 9mm Glock pistols, as well as valuable coins. Thomas stated that he used these guns to commit the above four bank robberies. After arresting Thomas on July 11, 2007, the FBI seized from Thomas' residence two Glock 9mm pistols, as well as valuable coins. Thomas confessed to robbing the above four banks, leaving the hoax bomb at Shenandoah National Bank, and stating that he would have shot his firearm at officers in order to slow their pursuit.

In each of the four robberies, Thomas wore a black ski mask, carried a back-pack, and used a firearm, all of which were seized from Thomas' residence after his arrest. Thomas also confessed to making similar statements as he left the banks, such as "now you can call the police." Surveillance video was obtained, and several seized items of Thomas' clothing match that of the robber in the video. The surveillance video from the Pioneer Bank robbery clearly depicts Thomas' face as he leaves the bank and removes his mask.

On July 19, 2007, Joel Martin ("Martin"), confessed to assisting Thomas rob two of the above banks. Martin served as the "look-out" while Thomas robbed Shenandoah National Bank, for which Thomas paid Martin $4000.00. Martin served as the "get-away" car driver during the Virginia Savings Bank robbery, for which Thomas paid Martin approximately $1300.00. Martin confirmed the clothing Thomas wore during the robberies, and he confessed to seeing Thomas' guns and hoax bomb and hearing Thomas state that he would "shoot cops." Martin also confirmed that Thomas told Martin that Thomas had stolen the 9mm Glock pistols from Hunter's Paradise.

8

The above Statement of Facts is a summary of the Government's case and is not intended to represent all the evidence the government has obtained in this investigation.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to a lesser offense in Counts One and Two of the Superseding Indictment, bank robbery, in violation of Title 18, United States Code, Section 2113(a) and he admitted to the allegations contained in Count Five; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to a lesser offense in Counts One and Two of the Superseding Indictment, bank robbery, in violation of Title 18, United States Code, Section 2113(a) and his agreement to forfeiture as set forth in Count Five. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for March 17, 2008 at 11:00 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file

9

written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

Dec 12, 2007
Date